PAUL DAILEY, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 28320.)

Court of Claims, October 31, 1947.

*Morris Zweibel* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Edward B. Murphy* of counsel), for defendant.

RYAN, J. Claimant sues the State of New York for damages for false arrest and imprisonment and for assault and battery by a State trooper. It is undisputed that claimant was arrested, taken to the State police barracks, lodged in jail, spent a night there and on the following afternoon paid a fine of $10 upon a plea of guilty to a violation of section 1221 of the Penal Law. It is also undisputed that some time between about 9:30 o'clock Saturday night, when claimant was arrested, and 7:15 o'clock Sunday morning, when the witness Widman, Putnam County jailer, came on duty for the day, claimant sustained

severe personal injuries, including a fractured jaw, loss of teeth and loss of blood. It is undisputed that these injuries were followed by a subperiosteal infection in claimant's jaw with the threat of osteomyelitis and attended by pain and suffering; that he required extended and expensive medical, surgical and dental care; that further dental care will be required and that claimant has a permanent scar on his face and a permanently altered bite as the result of trauma and of the remedial surgery. It is likewise undisputed that claimant, because of resulting physical incapacity, was out of employment for several months and sustained loss of earnings.

Three troopers, called as witnesses, deny that any one of them struck claimant. Moreover, two of them, and the Justice of the Peace, go so far as to say that on Sunday afternoon claimant's face looked "normal", saw "nothing unusual about it", did not observe "any marks on it", didn't notice that it was "swollen". Yet, that morning, the jailer Widman had brought claimant hot water, epsom salts and bicarbonate of soda with which to soothe and bathe his wounded face after that samaritan had observed that it was swollen, that blood was dried and caked on the sides of his mouth and that claimant's shirt was bloody. In addition, Widman observed that the commitment paper, which he found in the county jail office, was spattered with blood. That document had been given by the justice to the trooper who swore out the information and who delivered claimant to the custody of Patterson, the night jailer. It does not appear that anyone else had handled the commitment before Widman saw it. Patterson died before the trial. No one has suggested that he was the assailant. Nor is it suggested that claimant's son, Frank Dailey, who was claimant's companion throughout the eventful night, including the period of durance in a common cell block, assaulted his father. Instead, the son's story of filial attention with handkerchief and water, the only available comforts, during the vigil, stands uncontradicted.

Thus the fair preponderance of credible testimony supports claimant's version of the incidents of March 30 and 31, 1946, in respect to his treatment at the hands of the State police. Inasmuch as we reject their testimony on the subject of their conduct toward claimant, we may likewise, under the permissive rule of *falsus in uno, falsus in omnibus*, decline to believe them on the subject of claimant's intoxication. However, claimant admits that he had been drinking although he denies that he was intoxicated. His plea of guilty to the charge of public

intoxication was made under duress and, as we shall see later, his conviction was void. Even if he had been as drunk as the troopers and the Justice of the Peace would have us believe, he was, nevertheless, entitled to the protection of the provisions of section 699 of the Code of Criminal Procedure. (*People* v. *Reson*, 249 App. Div. 54.) On the sworn testimony of the justice, claimant was denied this protection. When the trooper came to the justice with the information against claimant and his son and told the justice that they were intoxicated, that worthy decided "I didn't want them brought in the house". He went out to the State police auto wherein the two Daileys sat and with the aid of the car light and the trooper's "five cell flashlight" "just looked in the back seat". He didn't know, "wouldn't say for sure" if he spoke to them. He "knew their names from the information". As to "which of the two was Paul or Frank?" the justice testified "Didn't make any difference to me." The justice further testified: "Q. Did you apprise them of their rights under the circumstances? A. Not that night. Q. You made no effort to tell them what they were entitled to, did you? A. They would get that the next day."

The foregoing testimony was developed upon cross-examination of the justice. Confronted with this obvious violation of the statute the Deputy Attorney-General sought an explanation from the justice upon redirect examination as follows: " Q. What was the reason that you didn't arraign them that night? A. Because I thought they were intoxicated. Q. And that they wouldn't understand the proceedings? A. That is right."

The justice then testified that he had seen intoxicated people "very many" times, "hundreds and thousands" and was asked this question: "Q. It was based upon all of those observations and based upon your observation of these two gentlemen that night in the back of the car that you concluded they were too intoxicated to be arraigned? A. That is right."

After observing the two men in the police automobile, as above narrated, the justice returned to his office accompanied by one of the troopers and signed the commitment. This he did without identifying Paul Dailey from Frank Dailey, without informing either of them of the charge against him or of his right to counsel and without allowing either of them time to send for counsel. In these, and in other particulars, the justice violated the provisions of the Code of Criminal Procedure.

A photostatic copy of the commitment signed by the justice was received in evidence. The photostat does not disclose the spatters of blood but it is not denied that they appeared on the original. What the photostat does disclose is a commitment of

Paul Dailey to the Sheriff of Putnam County for examination pursuant to the provisions of section 192 of the Code of Criminal Procedure, and in a form provided by section 193 thereof. These sections are found in Part IV of the Code which is entitled: "Of the Proceedings in Criminal Actions Prosecuted by Indictment." Paul Dailey was not charged with an indictable offense but with violation of section 1221 of the Penal Law of which a Court of Special Sessions has exclusive jurisdiction. (Code Crim. Pro., § 56-a.) The procedure is governed by Part V of the Code of Criminal Procedure entitled " Of Proceedings in Courts of Special Sessions and Police Courts " and the form of commitment, if an accused be held to answer the charge, is prescribed by section 734. The justice conducted himself as an examining magistrate and not as a Court of Special Sessions. This was error and his actions and proceedings, including the judgment of conviction, were void. (*People* v. *Quimby,* 72 Misc. 421; *People* v. *Kraft,* 229 App. Div. 281; *People* v. *Seidman,* 266 App. Div. 793.)

Inasmuch as the process and the judgment of conviction were wholly void and not merely erroneous it was unnecessary, as a condition to the maintenance of this action for damages for false arrest, that the claimant should have had that judgment vacated or set aside. (*Day* v. *Bach,* 87 N. Y. 56; *Matter of Bradner,* 87 N. Y. 171; *Fischer* v. *Langbein,* 103 N. Y. 84.) Jurisdiction both of the offense charged and of the person of the plaintiff is essential to make an existing judgment of conviction a bar to recovery. (*Jones* v. *Foster,* 43 App. Div. 33.)

The record thus supports a finding that the claimant was illegally confined in the county jail at the instance of the agents of the State of New York. The State must respond in damages. (*Vernes* v. *Phillips,* 266 N. Y. 298; *Tierney* v. *State of New York,* 292 N. Y. 523; Court of Claims Act, § 8.)

Claimant is entitled to recover herein for the assault and battery and for the personal injuries thereby sustained and also damages for his false arrest and imprisonment. Claimant's special damages, which were not controverted, were proved as follows: For transportation back and forth to the dentist's office and for medicines, including penicillin, $150; for surgical care, $250; for dental care, $200; for future dental care and dentures, $300; for loss of earnings, $800. These total $1,700.

In addition we award claimant for damages for assault and battery and for the pain and suffering and personal injuries caused thereby $5,500 and for damages for false arrest and imprisonment $1,500.

Findings in accordance with the foregoing.