Abraham N. Geller, J.
This is the rather strange case of an attorney suing the City of New York on five separate causes of.action for false arrest and imprisonment. Only one cause — the first — survived the trial, and the question as to whether the verdict thereon shall be permitted to stand must now be determined, decision having been reserved on the city’s motions to dismiss said cause and for a directed verdict in its favor.
A brief summary of the other causes and the manner of their disposition at the trial follows.
The court did grant the city’s motion for a directed verdict on the second cause of action, which was based on an allegedly improper arrest of plaintiff on an overtime and double parking *861 charge of which he was later convicted. It appeared to the court that authority did exist for an arrest in lieu of a summons in the case of a traffic infraction committed in the presence of a police officer (Code Crim. Pro., § 177, subd. 1; Squadrito v. Griebsch, 1 N Y 2d 471; Greater New York Charter, § 435; L. 1901, ch. 466); but that, in any event, the arrest was authorized in this case because plaintiff was a nonresident of the State at the time (see Squadrito v. Griebsch, supra, p. 478).
The third cause of action was withdrawn during the course of the trial. This was based on a commitment in the workhouse pursuant to a conviction in the Court of Special Sessions of the City of New York for a violation of certain sections of the Sanitary Code with regard to a multiple dwelling owned by plaintiff, or of which he was the person “in charge”. It became clear to the court as the trial proceeded, and evidently to his counsel, that the commitment order of the Court of Special Sessions was fully authorized under the law and valid.
The city’s motion for a directed verdict on the fourth cause was also granted. Plaintiff claimed that he had been illegally detained for one additional day, as the result of unreasonable delay on the part of the corporation counsel in processing approval of the bond given to secure his release on a certificate of reasonable doubt. It was clear from plaintiff’s own proof that the corporation counsel had not withheld approval of the form and sufficiency of the bond for any appreciable time. It is not clear from the Code of Criminal Procedure, or any related statute, whether it is the function of the District Attorney or of the corporation counsel to approve bonds given in connection with those Municipal Term convictions where the corporation counsel has appeared for the prosecution, and perhaps, this matter should be clarified by legislation so that there will be no question in the future as to whose function it is. But even assuming that a triable issue existed as to whether there was an unreasonable delay, there was no evidence in the case pointing to the corporation counsel’s responsibility therefor.
The fifth cause, based on an alleged disregard of an order staying further arrests upon a certain violation of the Multiple Dwelling Law pending an appeal, was submitted to the jury. It was instructed to determine whether plaintiff had been arrested against his will, as testified to by him, or had voluntarily appeared pursuant to a notice sent to him of a warrant issued prior to the stay order, as testified to by the warrant officer in charge. The verdict in favor of the city sustained its position that plaintiff had voluntarily appeared in response to *862 the notice and made it unnecessary for the court to pass on the reserved questions of law as to whether an arrest, which is wrongful only in the sense of constituting a violation of a stay order, can be the basis of an action for false arrest; and, if so, whether, since the arrest here was pursuant to a warrant validly issued prior to the stay order, plaintiff’s exclusive remedy was to apply to the court granting the stay to punish the offending party for contempt.
We now turn to the first and only remaining cause. The facts were not disputed and the question of plaintiff’s right to recovery is solely one of law. It was not possible, at the time of trial, to decide with confidence the basic issues of law. The court therefore submitted this cause of- action to the jury only on the matter of damages, reserving decision on defendant’s motions pending further reflection and a study of all relevant statutes and authorities. The jury returned a verdict of $9,000 for plaintiff. When the court reserved decision on defendant’s motions, it was tentatively of the opinion that a verdict might have to be directed for the city. However, after analysis of the post-trial briefs and considerable independent research, the court is constrained to conclude that defendant’s motions must be denied and the verdict allowed to stand.
The facts are briefly stated. Plaintiff was convicted in Municipal Term of the City Magistrates’ Court of the City of New York as the owner or person in charge of a multiple dwelling, of still another violation of section 80 of the Multiple Dwelling Law, and given a sentence of 30 days in the workhouse. He was committed on October 21, 1955 but obtained his release on October 25, 1955 by giving bail on a certificate of reasonable doubt granted by a Justice of the Court of Special Sessions. His appeal was not prosecuted and there were no further developments in the matter until some time in November, 1956, when he surrendered himself for several hours in order to test the legality of the sentence by a writ of habeas corpus in the Supreme Court. His writ was sustained and he was discharged, the court holding “that the jail sentence imposed is contrary to the provisions of the statute.”
It is not disputed by the city that the statute in question (Multiple Dwelling Law, § 304, subd. 1-a) provides that_ the only penalty which may be imposed for a conviction of a violation of section 80 of said law, is a fine.
Plaintiff is now seeking to recover damages from the city for this wrongful detention. But ‘‘ it does not necessarily follow * * * that a determination of illegality of imprisonment
gives rise ipso facto to a claim for damages for false arrest *863 and imprisonment ”. (Nastasi v. State of New York, 275 App. Div. 524, 525, affd. 300 N. Y. 473.)
Since plaintiff has sued the city, it is necessary to establish that it may be held liable under the doctrine of respondeat superior for such acts of an employee within the scope of his employment as would cause him to be liable in the first instance to plaintiff for the false imprisonment.
There is no longer any question as to the city’s liability for the torts of its employees even when performing governmental functions. The Court of Claims Act, which provides for a waiver by the State of its immunity from liability, also effected a waiver of the derivative immunity of the civil divisions of the State, thus making them liable for the acts of their employees in accordance with the same rules of law as are applicable to individuals and corporations. (Bernardine v. City of New York, 294 N. Y. 361; McCrink v. City of New York, 296 N. Y. 99.)
We consider then in turn the following employees or agents of the city whose acts resulted in plaintiff’s wrongful detention: the Building Department, which made the charge upon which he was convicted; the City Magistrate; and the Department of Correction, which detained him pursuant to the Magistrate’s commitment.
The Building Department, which merely sought a conviction for a violation of section 80 of the Multiple Dwelling Law, cannot be held responsible for the unauthorized commitment. It is not an ‘ ‘ instigator ’ ’ of the detention. It merely initiated the proceedings in question which resulted in the conviction, not here challenged, and, concededly, a fine on such conviction would have been entirely proper. “ There is a distinction between an individual who merely makes a statement that certain facts exist, leaving it to the authorities to determine whether or not an arrest should follow, and a situation where a person requests or directs that someone else be taken into custody. In the former case there may be no liability on the part of the person furnishing the information, but in the latter the instigator is liable.” (Grago v. Vassello, 173 Misc. 736, 739.)
As to the Magistrate, plaintiff expressly disavowed at the trial any claim against the city based on his erroneous imposition of a jail sentence. Apart from this disclaimer, the principle that a city cannot be held liable for a judicial act, even if lawless, has never been seriously questioned. ^ The^ judiciary is an independent branch under our tripartite division of government and it would be “ incongruous therefore to fasten *864 liability upon a municipality for the tort of a local judicial officer who acts wholly independent of and beyond the control of municipal authorities.” (Koeppe v. City of Hudson, 276 App. Div. 443, 446.)
This leaves as the only possible basis for plaintiff’s claim against the city, his detention by its Correction Department pursuant to the commitment signed by the City Magistrate. Such an act, if held to be tortious, may give rise to a claim against the city under the doctrine of respondeat superior. (See Warner v. State of New York, 297 N. Y. 395; Troutman v. State of New York, 273 App. Div. 619; Hailey v. State of New York, 190 Misc. 542.)
‘ ‘ A commitment is a warrant, order or process by which a court or magistrate directs a ministerial officer to take a person to prison or to detain him there.” (People ex rel. Allen v. Hagan, 170 N. Y. 46, 49.) The same rules which govern the liability of an officer who arrests a person under a warrant are applicable to the liability of a jailer who executes an order of commitment following a conviction. (Restatement, Torts, § 145.)
It is necessary then, to examine those rules and ascertain under what conditions an officer proceeding under judicial process may render himself liable for false arrest or imprisonment.
Obviously, a ministerial officer is protected in the execution of valid process issued by a court, even if the process is irregular in form. But, in addition thereto, he is privileged to arrest or detain where, though the process actually be invalid, it is “ fair on its face ”. (Restatement, Torts, §§ 122,123,124.) He is not required to embark upon an investigation to determine whether the process or order is valid, so long as there is nothing on its face to indicate that it is not valid (Nastasi v. State of New York, 275 App. Div. 524, 525-526, affd. 300 N. Y. 473, supra).
The officer is protected in obeying its command, if the process will pass the following test: “ It must have been issued by a court or officer having authority of law to issue such process, and there must be nothing on the face of the process apprising the officer to whom it is delivered for service, that in the particular case there was no authority for issuing it ” (1 Cooley on Torts [4th ed.], p. 354). In “ Comment b ” under section 124 of the Restatement of Torts, this test is described as follows: “Under this Section, the officer is privileged if the facts stated in the warrant would make it appear valid, when read by one who knows the law which determines, 1, the *865 authority of the court to issue it for the offense charged in it or for offenses of the same general character, 2, the jurisdiction of the court over the person named in it and 3, the proceedings necessary to its proper issuance.” (Italics supplied.)
This test goes back a long way to the days when the civil rights of the People, including the right to be protected from unlawful search and seizure, were being firmly established by the courts. In Wickes v. Clutterbuck (2 Bing. 483, 492) it was said that enough must be stated in the order of commitment ‘ ‘ to shew an authority to imprison, and without such a statement the officer cannot arrest.”
A warrant of commitment of an inferior court, it should be noted, ‘‘ which does not in its recitals show authority in the magistrate to issue it, cannot be upheld.” (2 Cooley on Torts, p. 439.) Accordingly, the warrant is void when “it emanates from an inferior court or officer, whose jurisdiction is never presumed, but must be shown, and is not shown on the face of the proceedings * * * and the officer to whom it is delivered is bound to know that he would not be protected in serving it.” (1 Cooley on Torts, pp. 358-359.)
This responsibility of the ministerial officer was described in very apt language in Faloon v. O’Connell (113 Me. 30, 32):
‘ ‘ while the officer is not bound to look beyond his warrant, he is bound to look at it. The safety of the citizen and his protection against unwarrantable deprivation of personal liberty require that an officer should assume at least so much responsibility. This doctrine also is founded upon public policy, and is a sound one, although it may seem to work a hardship in some individual cases.
‘ ‘ An officer is not protected by a warrant issued by a magistrate or inferior court, unless it shows on its face that the magistrate or court had jurisdiction to issue it. Jurisdiction cannot be presumed.”
Before applying the rule established by the authorities to the facts of this case, it is necessary to examine more closely into the commitment issued by the City Magistrate and his jurisdiction or authority to issue it.
The document states that it is a “ straight commitment, summary offense ” issued out of “ City Magistrate’s Court of the City of New York, Municipal Term, Manhattan.” It is directed to the commissioner of correction of the City of New York, recites plaintiff’s conviction on October 21, 1955 by Hon. .......“a City Magistrate of the City of New York, of....... [left blank] in violation of Multiple Dwelling Law and was thereupon duly sentenced by me to the workhouse for a period *866 of 30 days.” It commands the detention of plaintiff in custody for said period and is signed by the City Magistrate.
While the failure to state the particular offense, i.e., the involved section, is a serious defect (see People ex rel. Allen v. Hagan, 170 N. Y. 46, supra), the question as to whether the commitment is ‘ ‘ fair on its face ’ ’ and protects the Correction Department in executing it, goes even deeper. This commitment was not only void, it was also not “ fair on its face ”. When one appreciates the fact that a city magistrate has no authority to impose a jail sentence under any section of the Multiple Dwelling Law, it is clear that the Correction Department, charged with responsibility to know “ the law which determines * * * the authority of the court to issue [the commitment] for the offense charged in it or for offenses of the same general character” (Restatement, Torts, § 124, supra), is not protected by such a commitment from a claim for false imprisonment.
Section 304 of the Multiple Dwelling Law, entitled “ Penalties for violations ” formerly provided, as the New York State Joint Legislative Committee on Housing and Multiple Dwellings pointed out in its report (1953 Legislative Annual, p. 226) in connection with a 1953 amendment thereof, that “ all violations of the multiple dwelling law constitute misdemeanors.” (Report of said committee in connection with L. 1953, eh. 851, inadvertently referred to in McKinney’s Multiple Dwelling Law 1956, Cumulative Annual Pocket Part, p. 91 as “ recommended by the Law Revision Commission ”.) In 1953 said section 304 was amended pursuant to the said committee’s recommendations to provide that a violation of certain designated sections, including section 80 thereof, was to be deemed an “ offense ”, the penalty for which was to be a fine, and that “ the city magistrates’ courts in the city of New York, in the first instance, shall have exclusive jurisdiction to hear and determine charges of such violations.” (Subd. 1-a.) The committee gave the following explanation for the proposed amendment: ‘ ‘ Under the procedure applicable to misdemeanors in the city of New York, the accused is first arraigned for a hearing before the city magistrate and, if it appears that there is basis to the charge, the case is referred to the court of special sessions for final judgment. This procedure involves delay. * * * By this amendment it is proposed to reduce certain minor violations of the law from the status of misdemeanors to offenses and confer upon the city magistrate, the court of original jurisdiction, the power of summary disposition. It is believed that as a result delay in the enforcement of the law will be avoided.” (See report of committee, supra.)
*867 Thus, prior to the 1953 amendment, a city magistrate as such had no jurisdiction to hear and determine any violation of the Multiple Dwelling Law; and after the amendment, had jurisdiction only as to those sections specifically enumerated in subdivision 1-a of section 304 of said law, but in such case was limited to imposing a fine upon conviction. In no case, before or after the amendment, did a city magistrate in his capacity as magistrate have the authority to sentence to any term of imprisonment for a violation of any section of the Multiple Dwelling Law.
The jurisdiction of a city magistrate should be well known to the Correction Department. It receives numerous commitments daily from city magistrates. And, it may be observed, it is entitled, as a city department, to legal assistance from the corporation counsel (Greater New York Charter, § 395).
A city magistrate has summary jurisdiction to impose a sentence of imprisonment only in a limited number of offenses, such as disorderly conduct, vagrancy, public intoxication, and with regard to violations of certain sections of the Sanitary Code (N. Y. City Crim. Cts. Act, §| 102, 102-c, 120). It is the Court of Special Sessions of the City of New York which has exclusive jurisdiction of all misdemeanors committed within the city, except charges of libel (N. Y. City Crim. Cts. Act, § 31). It is true that a city magistrate may hold a Court of Special Sessions where the misdemeanor is of a certain type, including any violation of any provision of the Multiple Dwelling Law (N. Y. City Crim. Cts. Act, § 130, subd. g); but that may only be where, upon arraignment before him, and after taking the information, deposition and statement of the defendant or his waiver, and after informing defendant of his right to be tried by three justices of the Court of Special Sessions, defendant consents to have the action heard and determined by the magistrate sitting as a court (N. Y. City Crim. Cts. Act, § 131). In that event, the conviction is the determination of the Court of Special Sessions and the commitment states, as it should, that it is issued out of the Court of Special Sessions of the City of New York; the entire proceeding, and, of course, the matter of jurisdiction with it, has been transferred into one properly before the Court of Special Sessions.
The fact that here the trial was held before, and the determination made by, a City Magistrate holding “ Municipal Term ”, adds nothing to his power as a City Magistrate where no consent has been given to his sitting as a Court of Special Sessions. It is expressly provided that Municipal Term shall proceed *868 “ under the restrictions and in accordance with the procedure provided in article 4 [now VIII] of this act ” before sitting as a Court of Special Sessions (N. Y. City Crim. Cts. Act, § 142). Those restrictions include the necessary consent of a defendant ; and in the absence thereof, Municipal Term had no jurisdiction to hear and determine any charge of misdemeanor (People v. Aptaker, 25 N. Y. S. 2d 950).
It should be noted that no question of consent was here involved, since plaintiff was being charged with an offense, the violation of section 80 of the Multiple Dwelling Law, which was triable and determinable exclusively by a City Magistrate in his own capacity. Up to that point there was no defect of proceedings. It was the jail sentence imposed after the conviction which was illegal. The Magistrate was without jurisdiction to issue such a commitment.
This lack of jurisdiction should have been obvious on the face of the commitment to the Correction Department since, under no circumstances, could a commitment issue out of the “ City Magistrate’s Court of the City of New York” for a violation of the Multiple Dwelling Law.
This is not a case merely of judicial error, such as a term of imprisonment erroneously imposed because of confusion as to the facts or a misunderstanding as to which one of several sentencing provisions in the law is applicable and which' is later adjudged to be excessive. It is a case of utter lack of power to impose any sentence of imprisonment.
That distinction was made in the early case of Hill v. Bateman (1 Strange 710) cited among the authorities collated in the leading case of Savacool v. Boughton (5 Wend. 170, 174). It was there stated that an officer would be justified in executing a warrant where the issuing of such process was a matter within the justice’s jurisdiction, but not where the warrant was “ plainly ” out of his jurisdiction. In the Savacool case this was paraphrased as follows: ‘ ‘ This I understand to mean a warrant which appears on its face to be such as the justice could in no ease issue.”
In the Savacool case, the court also cited Cable v. Cooper (15 Johns. 152) involving the converse situation of a Sheriff releasing a prisoner on a writ of habeas corpus issued by a “Supreme Court Commissioner ”, and thereupon being sued for the “ escape ” of the prisoner. A commissioner had jurisdiction to issue writs in certain cases but not where the prisoner was being held in “ execution by legal process.” In the Savacool case it was said of this case (p. 176): “ Whatever appeared upon the face of the discharge, he knew, if he *869 rightly understood the powers of the commissioner, it was no authority for him to release Brown. * * * it showed on its face a want of jurisdiction in the officer who granted it; for he could not discharge a person in execution by legal process.”
In the more recent case of Politano v. Jacoby (240 App. Div. 733, affd. 263 N. Y. 573) a Sheriff was sued for false imprisonment arising from a detention of plaintiff beyond the limited period provided in section 72 of the Civil Bights Law upon a commitment for a fine for contempt of court. The order of the Supreme Court holding plaintiff (defendant husband in a separation action) in contempt of court for arrearages of alimony, directed that he be detained until he paid the fine “ and until he has given bond to plaintiff [wife] for $1,000 for the payment of future alimony.” There had been no previous order as to the matter of security. Pointing out that defendant husband was not given in the order a reasonable time interval to post the bond, the Appellate Division in sustaining the complaint against the Sheriff said: “ The provision contained in the order of August 5, 1930 requiring plaintiff to give a bond to secure future alimony, was on the face of the order invalid and beyond the jurisdiction of the court to make and constituted no protection to the respondent [sheriff] in continuing plaintiff’s imprisonment until compliance with such direction in the order.” That order, it was held, “ was clearly beyond the jurisdiction of the Special Term and is void Special Term, of course, had jurisdiction of the separation action and of the contempt motion before it but not to issue a commitment order so conditioned.
The Sheriff in the Politano case was thus held to be liable for a detention which he should have known from the face of the order to be unauthorized, even when made by a Justice of the Supreme Court — a matter which could be determined only by one who fully understood the law dealing with the subject of jurisdiction to issue process and commitment orders. Evidently, the law’s concern with the rights of persons to be free from illegal arrest or imprisonment has been the reason for the requirement that one who accepts the position of Sheriff, warrant officer or jailer shall keep himself informed on that subject, retaining counsel when necessary, or render himself liable in damages when he detains on a warrant or order which is invalid on its face.
See, also, Dailey v. State of New York (190 Misc. 542, 546, supra) where claimant, held by a Sheriff pursuant to a void commitment signed by a Justice of the Peace, was awarded damages against the State because he was ‘ ‘ illegally confined *870 in the county jail at the instance of the agents of the State of New York.” The commitment had directed claimant’s detention “for examination”, a matter outside the justice’s jurisdiction, the charge before him being one triable by him sitting as a Court of Special Sessions. In a somewhat analogous situation, it was held in Grago v. Vassello (173 Misc. 736, 738, supra) that an order of civil arrest signed by a Justice of the Peace based on the ground of defendant’s threatened disposal of property with intent to defraud creditors — a ground which was not included in the limited powers granted by statute for the issuance of an order of arrest by a Justice of the Peace — was absolutely void and the detention of plaintiff thereunder was unlawful.
I have thus arrived at the conclusion that the first cause constitutes a sufficient cause of action against the City of New York for plaintiff’s wrongful detention by its Correction Department. Thus, the undisputed facts established at the trial compelled a determination in his favor with an assessment of damages by the jury. In awarding $9,000 damages, I must assume that the jury gave credence to plaintiff’s testimony concerning the rather substantial special damages (as to which there was no objection) and included same, or a portion thereof, in the verdict it rendered.
I appreciate the burden which this decision casts upon the city, and particularly its Correction Department. That responsibility, however difficult it may be, must, as I see it, be borne if the rights of our citizens against unlawful imprisonment, occasioned by acts of the city or those acting for it, are to be preserved. I have been mindful in the course of my deliberations of the injunction laid down by the Supreme Court of the United States: “ There is no more sacred duty of a court than, in a case properly before it, to maintain unimpaired those securities for the personal rights of the individual which have received for ages the sanction of the jurist and the statesman ” (Ex Parte Lange, 85 U. S. 163, 178).
The evidence shows that this plaintiff’s frequent encounters with the law were due in large measure to his deliberate disregard of its requirements and processes. This determination has been rendered in his favor, because, despite his litigious and provocative attitude, his right to be protected against unlawful imprisonment can be no less than that of any other citizen.
Defendant’s motions to dismiss, for a directed verdict, and to set aside the verdict, on the first cause of action are accordingly denied.