In the Matter of "ANONYMOUS" et al., Appellants, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Respondent.

In the Matter of LILLIAN V. FISH, Respondent *v.* PETER M. HORN, Appellant.

First Department, February 27, 1964.

396

*Philip Weinberg* of counsel (*Irving Galt* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for Lillian V. Fish, Superintendent of Westfield State Farm.

*Annette Pinsky* of counsel (*Charles Schinitsky*, attorney), for " Anonymous ", appellant.

*Edward J. Bloustein* for Peter M. Horn, appellant.

VALENTE, J.   These two appeals present questions concerning the validity of orders of disposition of the Family Court — pursuant to sections 754 and 756 of the Family Court Act — placing 17-year-old girls in Westfield State Farm, a women's reformatory under the jurisdiction of the Department of Correction.

In *Matter of* " *Anonymous* " v. *People,* the appeal is by the Superintendent of Westfield State Farm from an order of the Family Court, Bronx County, directing the placement of a 17-year-old girl in Westfield for a period not to exceed 18 months. (*Matter of* " *Anonymous* ", 40 Misc 2d 8.)

In *Matter of Fish* v. *Horn,* the appeal — transferred to this court by order of the Appellate Division, Second Department,

pursuant to section 5711 of the Civil Practice Law and Rules — is from an order of prohibition entered in an article 78 proceeding. The order restrained a Judge of the Family Court, Queens County, from holding the Superintendent of Westfield State Farm, in criminal contempt for refusing to accept as an inmate a 17-year-old girl adjudicated " a person in need of supervision " under section 754 of the Family Court Act. (*Matter of Fish* v. *Horn*, 39 Misc 2d 121.) The appeal was transferred to this court because of the identity of legal issues with the appeal in *Matter of " Anonymous "* v. *People* herein.

The two girls — the subjects of the orders of the Family Court — are represented by Law Guardians, appointed pursuant to section 242 of the Family Court Act. The Superintendent of Westfield State Farm appears by the Attorney-General of the State of New York and the two Judges of the Family Court appear by private counsel.

*Matter of Fish* v. *Horn* poses two threshold procedural questions distinct from the concurrent issues in both appeals of the power of the Family Court to place persons in need of supervision in Westfield. One is the propriety of the remedy of prohibition, and the other, the power of the Family Court to punish for contempt for failure to comply with an order of disposition.

It is well settled that prohibition is the traditional remedy to determine whether a lower court is exceeding its jurisdiction. (*Matter of Hogan* v. *Court of Gen. Sessions*, 296 N. Y. 1; *People ex rel. Jerome* v. *Court of Gen. Sessions*, 185 N. Y. 504; *Matter of Martinis* v. *Supreme Court*, 20 A D 2d 79.) The remaining question of the power to punish for contempt in the premises will be dealt with in the subsequent portion of this opinion.

The new State-wide Family Court Act (L. 1962, ch. 686) which became effective September 1, 1962, gives the Family Court exclusive jurisdiction over juvenile delinquents and introduces a new category of a " person in need of supervision ". Subdivision (a) of section 712 narrows the definition of a " juvenile delinquent " to a " person over seven and less than sixteen years of age who does any act which, if done by an adult, would constitute a crime ". Subdivision (b) of the same section defines a " [p]erson in need of supervision " as " a male less than sixteen years of age and a female less than eighteen years of age who is an habitual truant or who is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of parent or other lawful authority ".

Section 754 of the Family Court Act provides that upon an adjudication of a " person in need of supervision ", the court shall enter an order of disposition which may discharge the

person with a warning, may suspend judgment, may place the person on probation or may place such person in accord with section 756. The latter section (subd. [a]) provides for placement of the child " in its own home or in the custody of a suitable relative or other suitable private person or an authorized agency, or a youth opportunity center ".

In both cases considered here, there had been an adjudication that each of the 17-year-old girls was a " person in need of supervision " in proceedings initiated by a parent of each of the girls (pursuant to Family Ct. Act, § 732) charging that the girls were incorrigible, ungovernable and habitually disobedient. Following a " dispositional hearing " (§ 743), the court in each case directed that the girl be " placed " in Westfield State Farm for a period not to exceed 18 months.

In each instance, the Superintendent of Westfield State Farm refused to accept the girl because of lack of jurisdiction. Westfield is a women's reformatory under the jurisdiction of the State Correction Department. Under section 2187-a of the Penal Law, dealing with commitments of female persons to reformatories, only females convicted of crimes or adjudicated to be wayward minors or juvenile delinquents can be sentenced to a reformatory. Relying on that section, the Superintendent of Westfield refused to receive girls who had been adjudicated only as " persons in need of supervision ".

Following the rejection by the Superintendent, the girl in the Bronx County case was eventually placed in the New York Training School at Hudson, New York, and the Queens County girl was remanded to the Women's House of Detention in New York City (from which she was subsequently discharged).

In each case, the Family Court Judge justified the placement of the girl in Westfield by construing the term " authorized agency " as used in section 756 of the Family Court Act as an institution supported or controlled by the State or political subdivision thereof. But such a broad construction — which would include penal institutions — would be at cross purposes with the underlying design of the new Family Court Act in setting up the category of a " person in need of supervision ".

In our view, the term " authorized agency " as used in section 756 of the Family Court Act, does not include the Westfield State Farm reformatory. The Legislature, in establishing a new class of persons, whose conduct — though not criminal — nevertheless required some court action, specifically differentiated such persons from the " juvenile delinquent "; and carefully made the distinction between " placing " persons in need of

supervision in the custody of an authorized agency and "committing" juvenile delinquents.

The impelling considerations which led to this differentiation are not matters of pure conjecture. In the Second Report of the Joint Legislative Committee on Court Reorganization dealing with the proposed new State-wide Family Court Act, it was pointed out that the decision not to authorize a commitment in the case of a person "in need of supervision" rested upon the knowledge that "any commitment — whether ' civil ' or ' criminal ', whether assertively for ' punitive ' or ' rehabilitative ' purposes — involves a grave interference with personal liberty and is justified only by urgent reason " (p. 8). The report continues with the observation that urgent reason has not been shown in the instance covered by the statutory definition of "person in need of supervision".

In unambiguous language, the Joint Legislative Committee expressed its intent regarding placement in the Westfield State Farm reformatory. It said (p. 12) : " The Committee does not believe that girls who have not committed any crime should be sent to such an institution ".

On the other hand, when treating with commitments for juvenile delinquency, section 758 of the Family Court Act authorizes in specific language a commitment to Westfield State Farm. When it is considered that sections 2187 and 2187-a of the Penal Law provide for commitment to a reformatory — such as Westfield State Farm — females convicted of felonies and misdemeanors, and adjudicated to be wayward minors or youthful offenders, the reluctance of the Legislature to allow placement of persons in need of supervision in such an institution is quite understandable.

Further evidence of legislative intent can be spelled out from the repeal (L. 1962, ch. 688) of the Girls' Term Court Act (L. 1951, ch. 716) under which females between 16 and 18 years of age, could, under certain conditions, be committed to Westfield. The Family Court Act did not re-enact those repealed provisions which empowered Magistrates to commit girls, not convicted of a crime, to a reformatory.

The argument that the acts of the girls involved herein fall within the definition of a wayward minor is completely demolished by the record showing that the girls were adjudicated to be " persons in need of supervision " and not wayward minors under title VII-A of part VI of the Code of Criminal Procedure. Moreover, sections 913-c and 913-d of the Code of Criminal Procedure expressly refer to persons " committed " to institutions,

and not " placed " as provided for in section 756 of the Family Court Act.

That " authorized agency " would not include a reformatory is further demonstrated by the enactment of an amendment to section 756 by the Legislature in 1963 (L. 1963, ch. 809, § 10) which added subdivision " d " expanding the term " authorized agency " to include until July 1, 1964 the State training schools established under article seven of the Social Welfare Law. (The effect of that act and consideration of the problem presented on the present appeals is discussed by a Family Court Judge in *Matter of " Anonymous "*, 40 Misc 2d 1058.)

The definition of " Duly authorized association, agency, society or institution " in section 119 of the Family Court Act is of no relevance to the meaning of " authorized agency " in section 756. Clearly the definition in section 119 deals with the remand and commitment of a child as provided for in section 116. The definition encompasses the entire complex of the term " Duly authorized association, agency, society or institution " and is not meant to deal with the individual components of the term.

In sum, the new State-wide Family Court Act is expressive of a purpose and policy to create a new category of a " person in need of supervision " to be distinct and apart, and to be considered in a class less culpable than that of " juvenile delinquent ". The entire structure of the act reflects a deliberate and calculated plan to place " persons in need of supervision " in authorized agencies for treatment and rehabilitation and not to commit them to penal institutions. Placement in a reformatory such as Westfield State Farm would frustrate the avowed purpose of the statute.

The enlightened method of the treatment of persons in need of supervision should be encouraged. If the learned Judges of the Family Court are confronted with a dilemma because of the lack of facilities to handle " persons in need of supervision ", their recourse should be with the Legislature to make such facilities available and not through circumvention of the commands of the statute.

There remains the question of whether the Family Court Judge, in *Matter of Fish* v. *Horn,* was exceeding his authority in entertaining a contempt proceeding against the Superintendent of Westfield State Farm for refusing to accept the 17-year-old girl adjudicated a person in need of supervision under section 754 of the Family Court Act. As indicated hereinbefore, the absence of such authority would serve as a proper foundation for prohibition.

Section 750 of the Judiciary Law gives a court of record power to punish for criminal contempt a person guilty, among other acts, of willful disobedience of its lawful mandate. Subdivision 8 of section 2 of the Judiciary Law makes the Family Court a court of record. However, section 156 of the Family Court Act provides: "The provisions of the judiciary law relating to civil and criminal contempts apply to the family court, except that the family court may not treat a violation of any order of disposition as a civil or criminal contempt, unless specifically empowered to do so under this act."

The Family Court is a statutory court and the statute that created it can impose limits upon the exercise of the power to punish for contempt. (See *Rutherford* v. *Holmes,* 66 N. Y. 368.) We must look to the statute to see what constitutes a contempt in the Family Court. (*The People ex rel. Court of Oyer and Terminer,* 101 N. Y. 245.) Moreover, the Judiciary Law contains the general provisions as to the power to punish for contempt as to all courts of record. Where there is a general statute and a subsequently enacted special statute, the rules of statutory construction require that if there is some inconsistency, the special statute must prevail. (*Warren Refining & Chem. Co.* v. *Sebring,* 192 App. Div. 14, 16.)

It is not unusual for statutes pertaining to separate courts to contain specific provisions regarding the contempt powers of the particular court. In some, such as subdivision 7 of section 20 of the Surrogate's Court Act, and section 33 of the New York City Criminal Courts Act, the Judges are given the same power to punish for contempt as provided in the Judiciary Law. Others, like section 156 of the Family Court Act and section 210 of the New York City Civil Court Act, contain exceptions. For example, section 210 of the New York City Civil Court Act makes all of the provisions of law governing civil and criminal contempts in the Supreme Court applicable to the Civil Court "except that this court shall have no power to punish for contempt a judge or justice of any court". See, also, section 19 of the Justice Court Act.

The Family Court succeeded to the jurisdictions theretofore exercised by the Children's Court and the Domestic Relations Court of the City of New York. Section 6 of the Children's Court Act and section 57 of the old Domestic Relations Court Act provided for the power to punish for contempt in those courts. It must be assumed that the exception contained in section 156 of the Family Court Act, not contained in the predecessor statutes, was intended for some useful purpose.

As has already been shown hereinbefore, the Family Court Act introduced a new category of a "person in need of supervision". Where there is an adjudication that a person is in need of supervision, an order of disposition is entered providing for "placement" of such person. The dichotomy of "placement" and "commitment" is perpetuated in the provisions of section 156 by excepting violations of orders of disposition from the contempt powers of the court.

Here the order at issue was unquestionably an order of disposition (Family Ct. Act, § 154). Hence, refusal to accept the child at Westfield State Farm in violation of the terms of the order could not constitute a contempt. There is nothing in the language of section 156 which restricts violations of the order of disposition to the parties in the Family Court proceedings. We may not engraft such an exception when the Legislature has not done so. We must read the statute as it is written and not as it may have been written. The language is clear and unequivocal. Prohibition was, accordingly, properly granted in this case.

From what has been set forth, the orders directing placement of the girls in these two cases in Westfield State Farm were invalid. They showed on their face that jurisdiction was being exceeded. To have accepted the girls at Westfield State Farm may have subjected the Superintendent to civil liability for damages. (See *Schildhaus* v. *City of New York,* 7 Misc 2d 859, mod. 10 A D 2d 566, affd. 8 N Y 2d 1108.)

Finally, mention should be made of section 279 of the Correction Law which provides that where it appears to the satisfaction of the Superintendent of certain reformatories, including Westfield State Farm, that a person committed to such reformatory is not properly committed, the Superintendent must cause the return of such person to the court making the commitment to be resentenced or dealt with properly. That section would not apply to a placement order as distinguished from a commitment. However, since the courts have determined that section 279 of the Correction Law imposed a duty on the Superintendent to return one not properly committed (see *People ex rel. Tomasula* v. *Foster,* 270 App. Div. 684, 687) it may be argued by analogy that the same procedure had to be followed in the case of an improper order of placement. The performance of a duty enjoined by law could hardly ground a contempt.

In *Matter of "Anonymous"* v. *People,* the order of the Family Court should be reversed on the law, without costs, and the matter remanded to the Family Court for disposition not inconsistent with this opinion.

In *Matter of Fish* v. *Horn,* the order of the Supreme Court, Queens County, should be affirmed, without costs.

STEUER, J. (dissenting in *Matter of Fish* v. *Horn*): The background of this proceeding is a placement ordered by respondent in a situation similar to that presented in *Matter of "Anonymous"* v. *People* (20 A D 2d 395) decided herewith. In this case, the petitioner, Superintendent of Westfield State Farm, refused to honor the order of placement ordered by respondent, a Judge of the Family Court. Upon petitioner's refusal to accept custody of the person as directed by the order, respondent issued a citation to punish petitioner for contempt. Before the return day of the citation, petitioner initiated the proceeding under review, which resulted in an order of the Supreme Court prohibiting respondent from proceeding in the contempt action.

On this appeal I believe there are only two questions involved. They are whether prohibition is a proper remedy and whether the Family Court has the power to punish for contempt for the failure to comply with its order. As to the first, there is no dispute with the position of the majority that prohibition is a proper remedy to test whether that power lies (cf. *Matter of Nolan* v. *Court of Gen. Sessions,* 11 N Y 2d 114; *Matter of Kraemer* v. *County Court,* 6 N Y 2d 363).

But whether application of the remedy is called for depends wholly on whether the Family Court has the power to punish for contempt in the situation presented. If the power exists, it is quite immaterial to the decision of the application under review as to how it will be exercised, or even whether the situation is a proper case for its exercise. In this view of the case, the question of whether the court should have ordered placement in the institution in question is not significant. It might well be a different matter if the Family Court lacked jurisdiction to make an order of placement or if the institution were one to which that court could in no instance direct a person to be placed. Absent these factors, the order was proper as a jurisdictional matter and hence should have been obeyed, until and unless reversed or stayed by proper authority. The Warden of a prison does not have competence coequal or superior to a court to determine whether a person is rightfully committed to his custody. And it is of no moment that, absent the jurisdictional situation referred to, he may be quite correct in his contention that the person should rightfully have been ordered to another penal institution, or to none at all. Had the Warden any such right, he could with equal right question any possible flaw in the order or in the underlying conviction or finding. It is patent that he may not do so, and equally patent that attempts

in that direction would create a condition of havoc requiring instantaneous correction.

We turn now to the question of whether the Family Court can enforce the Warden's compliance by contempt. The contempt powers of the court are such as set out in section 156 of the Family Court Act reading: " The provisions of the judiciary law relating to civil and criminal contempts apply to the family court, except that the family court may not treat a violation of any order of disposition as a civil or criminal contempt, unless specifically empowered to do so under this act." It was held below that the Warden's act was a violation of an order of disposition, and hence within the proscription against treating it as a contempt. While it is quite true that, generally speaking, the order was one of disposition, its dispositive character concerned only the person whose care was provided for. It must be quite clear that the purpose of the act was to provide sanctions other than contempt to insure compliance with the court's orders. While the Family Court Act does not elsewhere authorize contempt proceedings under the denomination " contempt ", it does in several places provide the usual consequences of a contemptuous disobedience on a procedure in all respects equivalent to a contempt proceeding (§§ 372, 454, 542). In all of these instances it is a person who has been the subject of a prior order who becomes liable to the process in the nature of the contempt (the neglectful parent, the person liable for support, the putative father in a paternity proceeding). The conclusion is inescapable that the restriction in section 156 means that, in situations other than those provided for in the cited and like sections, a person subject to an order shall not be proceeded against by way of contempt, or be subject to imprisonment for his failure to comply.

If this were not the purpose, the grant of contempt powers would be a futility. Obviously the power exists to insure the orderly functioning of the court. That cannot be carried out if the officers to whose execution the court's mandates are entrusted can comply or refuse at their pleasure. Ordinarily there would be no question that a flouting of an order by such an official would best be met by contempt proceedings, and the limitation on the power of the Family Court Judges as regards contempt does not change this. A holding to the contrary necessitates taking a word out of context to produce an incongruous result.

If in this, as in all other instances, the power is abused, it will then be time to afford relief. But in the absence of knowledge of what will be done, an abuse should not be presumed.

Proceeding No. 1:

BOTEIN, P. J., EAGER, STEUER and WITMER, JJ., concur.

Order, entered on August 21, 1963, unanimously reversed, on the law, without costs, and the matter remanded to the Family Court for disposition not inconsistent with the opinion of this court filed herein.

Proceeding No. 2:

BOTEIN, P. J., and EAGER, J., concur with VALENTE, J.; STEUER, J., dissents in opinion in which WITMER, J., concurs.

Order, entered on May 16, 1963, affirmed, without costs.