REQUESTED BY: Harold W. Clarke, Director, Nebraska Department of Correctional Services
You have asked several questions dealing with the meaning of Neb. Rev. Stat. § 83-178 (1994) and what it requires. Specifically you asked the following:
 1. What type of information is subject to § 83-178, i.e., does it include psychological and medical records?
2. What is prohibited by § 83-178?
 3. Can an inmate see his or her institutional filed with a court order?
 4. Does the phrase "any person committed to the department" include persons who have been discharged and county safekeepers?
 5. Can an inmate see the inmate filed in a subsequent sentencing procedure or civil proceedings, such as proceedings for termination of parental rights, where the court may see the inmate's file?
 6. Can courts in civil cases, such as divorce and paternity actions, and district courts from other states issue orders allowing anyone from the public to have access to an inmate's file?
In addressing each of your inquiries we will refer to the file in question as the inmate's file.
1. ARE THE INMATE'S PSYCHOLOGICAL AND MEDICAL RECORDS PART OF THE INMATE'S FILE?
The Department of Correctional Service (DCS) is required by § 83-178 to maintain an individual file for each person committed to DCS which shall include:
(a) His or her admission summary;
(b) His or her presentence investigation report;
(c) His or her classification report and recommendation;
 (d) Official records of his or her conviction and commitment as well as any earlier criminal records;
(e) Progress reports and admission-orientation reports;
 (f) Reports of any disciplinary infractions and of their disposition;
(g) His or her parole plan; and
 (h) Other pertinent data concerning his or her background, conduct, associations, and family relationships.
It is appropriate to interpret § 83-178 as requiring that an inmate's medical and psychological records be maintained in an inmate's individual file. Subsections (a) and (e) of §83-178 require that an inmate's admission summary and progress reports be maintained in an inmate's file. The Department is required to complete a physical exam and thorough evaluation upon an inmate once an inmate has been admitted and said physical evaluation is to include an inmate's psychological condition pursuant to Neb. Rev. Stat. § 83-179 (1994). Therefore the physical evaluation, which includes the psychological evaluation, should be included as part of the admission summary. The subsequent progress notes, both medical and psychological, that are generated after admission should also be maintained in the institutional file.
2. WHAT IS PROHIBITED BY § 83-178?
Anyone who is considered "the public" cannot be allowed to review an inmate's file maintained pursuant to § 83-178 in the absence of a court order. Based upon this analysis, a signed release from the inmate would be insufficient for an inmate's attorney to obtain access to the inmate's medical or psychological file. The inmate's attorney would be in the same position as any member of the public and would need to get a court order to obtain access to an inmate's file.
This office has previously given the opinion that other governmental agencies are not considered "the public" for purposes of § 83-178(2), and therefore may get access to the inmate's file in the absence of a court order. Informal Attorney General Opinion, dated August 19, 1977, addressed to Director Joseph C. Vitek, and Attorney General Opinion, No. 93096, dated November 17, 1993, addressed to Chairperson Ethel Landrum of the Board of Parole.
3. CAN AN INMATE SEE HIS INMATE FILE WITH A COURT ORDER?
We now believe that the previous informal Attorney General opinion addressed to Vitek, dated August 19, 1977, incorrectly implies that a "person committed to the department" may have access to the contents of his file with a court order. "Except by court order for good cause shown" is an exception limited to "public inspection" in § 83-178(2). This is as a result of how the sentence is structured in § 83-178(2):
 The contents of the file shall be confidential and shall not be subject to public inspection except by court order for good cause shown and shall not be accessible to any person committed to the department.
(Emphasis added).
If a member of the public does obtain a court order after having shown good cause to have access to the inmate file, DCS employees should demand to see a copy of the court order. It is desirable that the court order should provide that no person committed to DCS should have access to the file, or anything that may be copied from the file. However, there is no specific requirement in § 83-178(2) as to what must be included in the court order. Therefore, there is not any authority for denying access to an inmate's file based on the reason that the court order does not provide that no person committed to DCS can have access to the inmate's file or anything copied from said file. This is a matter of law that can be communicated by DCS employees to anyone who is given access to an inmate's file.
4. DOES THE PHRASE "ANY PERSON COMMITTED TO THE DEPARTMENT" INCLUDE PERSONS WHO HAVE BEEN RELEASED AND COUNTY SAFEKEEPERS?
What is meant by "any person committed to the department?" You have asked specifically about whether inmates who have been released and county safekeepers are considered to be "any person committed to the department." Once an inmate has been discharged he or she can no longer be considered "any person committed to the department." The term "committed" connotes the placement of a person in the custody of an agency, such as a jail, DCS, or a mental institution. While an inmate is on parole, he or she would still be in the custody of DCS and, therefore, would still be a person committed to DCS. When a person is discharged from DCS, he or she is no longer committed. If the Nebraska Legislature had intended that any person who had ever been committed to the department to be excluded from seeing his or her inmate file, the Legislature could have stated "any person who has ever been committed to the department" as opposed to "any person committed to the department."
County safekeepers who are being held at a DCS facility would be considered "any person committed to the department" since a person does not have to be convicted before they can be committed. While there is no case law in Nebraska that has defined the term "commit," other jurisdictions have held that "commit" means to put in charge of a jailer or to imprison.Schildhaus v. City of New York, 163 N.Y.S.2d 201, 7 Misc.2d 859
(1957); Ex Parte Arapis, 157 Tex. 627, 306 S.W.2d 884 (1957);People v. Lykes, 124 Ill. App.3d 604, 464 N.E.2d 849 (1984);State v. Knipe, 349 N.W.2d (Iowa 1989). A person who has been arrested and held in county jail prior to the criminal trial is still considered committed to the county jail. When the county jail transfers a county safekeeper to DCS, the county jail has committed that county safekeeper to DCS.
5. CAN AN INMATE SEE THE INMATE FILE IN A SUBSEQUENT SENTENCING PROCEDURE OR CIVIL PROCEEDING SUCH AS A TERMINATION OF PARENTAL RIGHTS WHERE THE COURT MAY SEE THE INMATE FILE?
You have also asked whether an inmate may have access to the inmate file after having been discharged from a prior conviction and then recommitted on a new conviction. This question has partially been answered above in discussing whether a discharged inmate would be considered "any person committed to the department." A discharged inmate would be in the same position as any member of the public as far as having access to the inmate file.
The probation officer completing the presentence investigation may access the DCS inmate file if necessary pursuant to Neb. Rev. Stat. § 29-2261(3). It is within the sentencing judge's discretion to allow the offender or his attorney to review all or part of the presentence report pursuant to Neb. Rev. Stat. § 29-2261(6). Therefore, it is feasible that a discharged inmate may be able to see his inmate file if the sentencing judge so orders. However, the prosecutor or the probation officer could make an argument to the sentencing judge in opposition to a discharged inmate seeing anything from his inmate file. The legislature has already determined that it is in the public's interest to prohibit an inmate from having access to his inmate file during the time he is incarcerated. This public policy should apply with equal force to a discharged inmate who more likely than not will be returning to the custody of DCS.
Since it is possible for an inmate to commit a crime while incarcerated, there could be a conflict between Neb. Rev. Stat. § 29-2261(6) and § 83-178. It has long been held that special provisions of a statute in regard to a particular subject will control over general provisions in the same or other statutes to the extent there is a conflict. State v. Wood,245 Neb. 63, 511 N.W.2d 90 (1994); Metropolitan Life Insurance v.Kissinger Farms, Inc., 244 Neb. 620, 508 N.W.2d 568 (1993); andMaack v. School Dist. of Lincoln, 241 Neb. 847, 491 N.W.2d 341
(1992). Since § 83-178 is more specific in terms of DCS inmate records than § 29-2261 (6), it controls to the extent a conflict may arise as to whether or not a sentencing judge may allow an inmate to see any part of an inmate file that may be part of a presentence report. Thus, an inmate who is in the custody of DCS at the time of sentencing would not be allowed access to his inmate file if it was made part of the presentence report.
You have asked whether the inmate would be prohibited from seeing the inmate file if it were used by a court in a civil proceeding, such as a child custody case. A strict reading of § 83-178 would dictate that the inmate would not be allowed to see the file. This could potentially raise some due process problems. While it is difficult to anticipate what may occur in some hypothetical situation in the future there are procedures in place that would seem to resolve any potential due process problems.
The juvenile court should not consider anything that was not made part of the record. While the strict rules of evidence do not apply to termination of parental rights proceedings pursuant to Neb. Rev. Stat. § 43-283, proceedings to terminate parental rights must employ fundamentally fair procedures satisfying the requirements of due process. In re Interest ofJ.K.B. and C.R.B, 226 Neb. 701, 704, 474 N.W.2d (1985). Therefore, if an inmate's file was considered by the juvenile court, then it would have to be part of the record. It is important for DCS to stress to any governmental agency that seeks access to an inmate's file that persons who are committed to DCS are not allowed by law to review anything in their inmate file pursuant to § 83-178 (2). In this way the attorney offering anything from the inmate's file could request that either the exhibit with any portion of the inmate's file be sealed or there be some type of protective order prohibiting any person committed to DCS from having access to the exhibit.
An inmate does not have the right to be physically present at a termination of parental rights proceeding provided the inmate has been afforded procedural due process, i.e., some other means of participating in the process besides being physically present. It is within the juvenile judge's discretion as to whether or not the inmate should be present. In Re Interest of L.V., 240 Neb. 404,482 N.W.2d 250 (1992). While a parent is not required to have counsel in termination of parental rights proceedings, a parent does have the right to counsel and counsel will be appointed if the parent cannot afford one. An inmate's attorney in the proceeding would be in a position to review any evidence that is offered, including evidence from the inmate's file. This would seem to resolve any potential due process problems, because the inmate's representative would be allowed to review any evidence from the inmate's file without violating § 83-178(2).
6. CAN COURTS IN CIVIL CASES SUCH AS DIVORCE AND PATERNITY ACTIONS AND DISTRICT COURTS FROM OTHER STATES ISSUE AN ORDER ALLOWING ANYONE FROM THE PUBLIC TO HAVE ACCESS TO AN INMATE'S FILE?.
You have asked what type of court has the authority to enter an order allowing a member of the public to review an inmate's file. "By court order" implies that any court in Nebraska has the authority to enter an order allowing access to an inmate's file. It is not limited to any particular type of legal action or court. Therefore, it would be possible in divorce or paternity proceedings for a district court to enter an order permitting access to an inmate file.
A district court outside of Nebraska does not have the authority to issue an order pursuant to Neb. Rev. Stat. §83-178(2) to allow anyone from the public to have access to an inmate's file maintained by DCS. If someone from outside of Nebraska requests access to an inmate's file, it would be necessary for him or her to apply to a court in Nebraska to issue an order to obtain access to the inmate's file under Neb. Rev. Stat. § 83-178(2).
Sincerely,
 DON STENBERG Attorney General
 Melanie J. Whittamore-Mantzios Assistant Attorney General
Approved By:
Don Stenberg 
Attorney General